## BOWLING *et al.* *v.* TAYLOR.

*(Circuit Court, D. Connecticut. November 21, 1889.)*

1. CONTRACTS—RESTRAINT OF TRADE.
   Complainants, who were manufacturing under patents stays which consisted of a stiffening blade having a sheet of rubber on each side, and an outer layer of cloth over each sheet, and defendant, who was making two kinds of stays,—the "Bridgeport" and the "Self-Attaching,"—both of which complainants claimed to be infringements on their patent, entered into an agreement by which complainants licensed defendant to make the "Self-Attaching," provided he would not make the "Bridgport" stay; and defendant agreed to make no stays consisting of a steel, a layer of gutta-percha, and two outer layers of fabric. By a supplemental agreement they confined themselves to the manufacture of the "Self-Attaching" by the defendant, and the "Ypsilanti No. 1" by complainants, the latter being a stay of the double layer kind; but it was agreed that complainants might put a cheaper double layer stay on the market, provided they would furnish defendant, at a certain price, the same quantity of such cheaper stay as should be sold by themselves. Complainants put a cheaper stay—"Ypsilanti No. 2"—on the market, and filled defendant's orders for the same, and afterwards, against the protest of defendant, began to make and sell a still cheaper stay, called the "America," of which they offered to let defendant have the same quantity as sold by them, at the same price as was paid by their agent. Defendant refused to take them, and, claiming that complainants had broken their agreement in selling the cheaper stay, "America," to the injury of the sale of "Ypsilanti No. 2," he commenced the manufacture of the "Bridgeport," and also of a stay in which glue or paste was substituted for gutta-percha. *Held,* that this contract was not in restraint of trade.

2. SAME—BREACH—INJUNCTION.
   Nor was there such material breach of the contract by complainants as would justify refusal of defendant to carry out his part of the contract; for which reason a temporary injunction should be granted against the manufacture by defendant of stays containing a stiffening blade with one or two layers of gutta-percha, and two outer layers of fabric, but not against the manufacture of the stay in which paste or glue is substituted for gutta-percha.

In Equity. Motion for preliminary injunction.

*Greenbaum & Hayes*, for complainants.
*Sherman H. Hubbard* and *Henry Stoddard*, for defendant.

SHIPMAN, J. This is a motion for a preliminary injunction in a bill in equity, by citizens of the state of Michigan, against a citizen of the state of Connecticut, which is brought for a permanent injunction against the further violation by the defendant of his agreement not to make ladies' stays in the manner alleged. to have been secured to the complainants by their patent.

On October 5, 1888, the complainants were manufacturing, under three patents to E. C. Bowling and one to Elsie M. Smith, ladies' dress stays, which consisted of a stiffening blade, having a sheet of rubber on each side thereof, and an outer covering of cloth over each sheet. The defendant was also then manufacturing a ladies' stay, called the "Bridgeport Stay," consisting of a stiffening blade, with a single layer of gutta-percha on one side, and an outer layer of fabric on each side. He was also manufacturing, under a patent to Roscoe B. Wheeler, a stay called the "Self-Attaching Stay," consisting of a blade, a gutta-percha strip on one side, and a layer of cloth on the other side. Each of these forms was claimed by the plaintiffs to be an infringement of the principal Bowling patent, a reissue of which had been applied for. They had also commenced in the patent-office an interference proceeding in regard to the Wheeler patent, and had threatened the defendant with a suit. On October 5, 1888, the parties entered into a written agreement, which was amended on the same day by a subsequent agreement, which agreements were, in substance, as follows: The complainants licensed the defendant, under their patents, to make and sell stays "designed to operate upon the self-attaching principle," *i. e.*, "the Self-Attaching Stay" described in the Wheeler patent, provided he should make no Bridgeport stays, except he could sell 3,000 gross then in process of construction, and fill all orders theretofore received. The complainants agreed not to make the self-attaching stays of the Wheeler patent, and to make no effort to annul or disturb it; and the defendant agreed that he would make no stays consisting of a steel, a layer of gutta-percha, and two outer layers of textile fabric. Minimum prices were fixed for the self-attaching and the double layer stays, which the complainants were then making. The complainants sold to the defendant their interest in the English and French patents of Wheeler. By the supplemental agreement the parties agreed to confine their manufacture respectively to the stays known as the "Self-Attaching" and the "Ypsilanti No. 1." If, however, the complainants should deem it advisable to put upon the market a cheap stay of the double layer kind, they should, upon demand, furnish the defendant, at a price of 50 cents per gross, a quantity of said stays equal to that put out and sold by the complainants. In the event of the putting out of this cheap stay, the net price to the trade should be the same by both parties; the complainants to fix the price. The cheap stay, called "Ypsilanti No. 2," was immediately put upon the market; the price was fixed; the defendant commenced to order; and his orders

were filled. The anticipated reissue was delayed, and, for a time, denied; and infringers sprang up, who put cheap goods upon the market. The firm which sold all of the complainants' stays in the city of New York, other than those sold by Taylor, was very anxious that the complainants should make a cheaper stay than the "No. 2," which would cost 36½ cents per gross, and which they would sell from 25 to 35 cents, —at a loss to themselves,—and thus undersell the cheap goods of their rivals, and destroy competition; and in January, 1889, the complainants promised that they would send the New York firm 6,000 gross of these cheap goods. They informed the defendant of this plan on January 4 or 5, 1889, and asked him if he would take some of these goods at 36½ cents, and sell at a loss. He declined, and said that such a course would injure the sales of "No. 2;" and that it was a breach of the contract; and that he would resume the manufacture of the Bridgeport stay. On January 9, 1889, complainants telegraphed defendant as follows: "After consultation, we are agreed that the fewer cheap stays made, the better. Shall ship Model Co. only enough for present orders." Upon receipt of this telegram, defendant telegraphed complainants, asking at what price they could furnish 10,000 gross of these cheap stays, and on January 10th wrote complainants, protesting against the sale of this cheap edition of No. 2 stay, and stating that his attorney regarded it as an abandonment of the contract. On January 11th complainants telegraphed defendant: "Cannot fill orders for cheap stays under 30 days. Price, 36½ cents;"—and on January 16th, upon the return of Mr. Bowling, he telegraphed defendant: "Have limited Model Co. to 6,000 gross cheap stays. Will place you on equal terms as to price and quantity. Price 31 cents, net cash, f. o. b. Ypsilanti." This stay was called "The American." The defendant resumed the manufacture of the Bridgeport stay, at a cheap rate. In July, 1889, the reissue of the Bowling patent was granted, and thereafter in Detroit, in Bridgeport, and in New York, and by correspondence, both by telegraph and by mail, much talk and negotiation were had between the parties respecting the discontinuance by the defendant of the manufacture of his cheap stays. This negotiation ended as follows. On August 23, 1889, defendant wrote complainants the following letter:

"OFFICE OF THOS. P. TAYLOR, MANUFACTURER OF FOLDING BUSTLES, DRESS STAYS, DRESS SHIELDS, DRESS EXTENDERS, CORSET CLASPS, AND STEELS.

"(Dictated.)                          BRIDGEPORT, CONN., August 23rd, 1889.

"*The Ypsilanti Dress Stay Co., Ypsilanti, Mich.*—GENTLEMEN: Since my letter of recent date, I have decided to discontinue the manufacture of the cheap stays which have been the subject of our recent controversy, and to manufacture, instead, a stay of a different character, which will not in any way come under your patents. I will put out samples of the Ypsilanti No. 2 stay at once, and will endeavor to push their sale in accordance with the terms of our contract. I should also like to request immediate information as to what you intend to do with me about the cheaper stay, which you are now selling under the name of "American." In accordance with my talk with Mr. Bowling when here, I shall be entitled to a large quantity of these stays at

cost. Kindly figure out the cost, and let me know in what quantity you can supply them; and I will place an order at once. With best regards, I am, "Yours, very truly, THOMAS P. TAYLOR. "P. S. I have about 1,200 lbs. thin gutta-percha, running 17 to 18 yds. to the pound, which I should like to sell at $1.25 per pound."

He also sent them a sample of his proposed cheap stay, which, if I understand the matter correctly, did not contain gutta-percha, but was made with paste or glue. The complainants telegraphed defendant, August 29th: "You are entitled to about 13,000 gross cheap stays, at 31 cents gross. Unless you stop at once manufacturing and selling cheap stays, will push suit against you." And, in reply to the defendant's telegram, "What do you mean by cheap stays. Does the stay with glue come under your patent?" complainants telegraphed: "Under your contract, you have no right to make stays like sample sent us." The defendant replied, on August 31st, that this telegram put an end to negotiations, so far as he was concerned, and is continuing the manufacture of the Bridgeport stay.

It is not intended to give either a complete and detailed statement, or a summary of the conversation, correspondence, and negotiations, as detailed by the defendant, from September, 1888, to August 31, 1889, but to give so much as will explain the leading matter of defense in the affidavits and in the argument. viz., an alleged breach of contract by the complainants in putting upon the market their cheap "American" stay, to the injury of the sale of "No. 2." Much has been attempted to be made of the complainants' conduct in this regard; but the correspondence shows, to my mind that, if the outcry which was made was not made merely to accomplish business purposes, an undue and exaggerated importance has been given to the matter. It appears that about 13,000 gross of this cheap stay, amounting to $5,000, are all that have been sold; and the correspondence from complainants' telegram of January 9th to the defendant's letter of August 23d, much weakens the weight which is attempted to be given to this alleged breach of contract, if it does not show that it has no weight at all. The correspondence does not now show to me that up to the present time there is an adequate reason why the contract should not be carried out in accordance with a fair and reasonable construction of it. I might discuss the various matters of defense more at length, but I prefer to postpone such discussion until full proofs have been made. The defendants insist that the contract is void because it is in restraint of trade, was unreasonable and oppressive, and attempted to create a monopoly. If the construction was true which he seeks in argument to place upon the contract, viz., that he is excluded for all future time, from the manufacture of any stay produced by any other method or by any other person, but can only manufacture the "Self-Attaching Stay," the argument of the defendant would have more weight. But the contract was one in regard to the manner in which the parties should exercise their alleged patent-rights, and had reference merely to the manufacture of goods under the specified patents.

If I correctly understand the character of the stay which the defendant

proposed to make in his letter of August 23d, and a sample of which he sent to the complainants, it did not contain gutta-percha or its equiv-' alent, and its manufacture should not have been objected to by the complainants; but, inasmuch as, long prior thereto, the defendant had been improperly violating his agreement, I do not think that the subsequent error of the complainants ought to be considered an adequate excuse for his conduct. They should, however, withdraw their opposition or objection to his manufacturing a paste stay. Let a preliminary injunction issue, restraining the defendant ·from the manufacture or sale, *pendente lite,* of stays containing a stiffening blade, with one or two layers of gutta-percha and two outer layers of fabric; it being also provided that the substitution of paste or glue for gutta-percha is not, during the continuance of the injunction, to be considered a breach of it.