### DICKERSON v. MATHESON et al.

(Circuit Court of Appeals, Second Circuit. August 1, 1893.)

1. SALE—PATENTED ARTICLE—NOTICE OF RESTRICTION.

A firm in Germany, having the right, under European and American patents, to sell a patented coloring matter in Europe and the United States, was accustomed to sell with restrictions against exportation to the United States. A London firm, which knew of this restriction, sent an order to the London agents of the German firm for a quantity of the goods "strong for export." Held, that there was no notice of an intention to export to the United States. 50 Fed. Rep. 73, affirmed.

2. PRINCIPAL AND AGENT—NOTICE TO AGENT.

On receiving notice of the arrival of the goods in London, the purchasers made out a check for the price, and gave it to their clerk, who, in the usual course of business, exchanged it for the invoice sent by a messenger of the seller's London agent. This invoice contained a notice of the prohibition against exporting to the United States, but the attention of the firm was not called thereto until a day or two later. Held, that notice to the clerk was notice to the firm, and, having accepted the goods with notice, the firm was bound by the restriction. 50 Fed. Rep. 73, affirmed.

3. PATENTS FOR INVENTIONS—SALE WITH RESTRICTIONS—INFRINGEMENT.

The owner of patents granted in Europe and the United States, who sells the patented article in Europe with a prohibition against importation into the United States, may treat as an infringer one who sells that article in this country. 50 Fed. Rep. 73, affirmed.

4. PRACTICE—STIPULATED EVIDENCE.

The parties stipulated that, to save the delay and expense of a commission, the cause should be tried as though certain facts therein set out had been given. On the same day a joint letter by respective counsel was sent, requesting the persons addressed to procure the affidavit of one of the purchasing firm as to the prohibition in the invoice. Held, that an affidavit of one of the addressed parties as to statements made by the member of said firm in the presence of the persons so addressed was mere hearsay, and not the equivalent of the affidavit requested.

5. SAME—CONTINGENCY.

In the absence of anything in the stipulation, joint letter, or the surrounding circumstances to indicate that the use of the stipulated facts was contingent on obtaining the requested affidavit, such facts were properly admitted in evidence.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Suit by Edward N. Dickerson against William J. Matheson and James N. Steele for infringement of a patent. From a decree for complainant, (50 Fed. Rep. 73,) defendants appeal. Affirmed.

For decision on motion for an interlocutory injunction, see 47 Fed. Rep. 319.

E. N. Dickerson, for complainant.
Henry P. Wells, for defendants.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the circuit court for the southern district of New York in favor of the complainant in a bill in equity for the infringement of letters patent. On November 3, 1885, letters patent of the United States, No. 329,632, were issued to Carl Duisberg, a German, for an improvement in coloring matter known as "Benzo-Purpurine." On December 21, 1885, Duisberg assigned the patent to a German corporation called "Farbenfabriken, vermals Fr. Bayer & Co.," and known in the case as the "Bayer Company," which was also the owner of a German patent for the same invention. On March 8, 1888, the Bayer Company assigned the patent, including the right to recover for past infringements, to the complainant. At the time of the transaction which is the subject of this controversy, another German corporation, by the name of the "Actien Gesellschaft fur Aniline Fabrikation of Berlin," called in this suit the "Berlin Company," had the right, as licensee of the Bayer Company, to sell the patented color both in Europe and in the United States under the European and United States patents. The alleged infringement consists in the importation into this country, in November, 1887, and the subsequent sale therein, by Matheson & Co., who are merchants in New York, of one ton of benzo-purpurine, made under said letters patent by the Berlin Company. The purchase by the defendants was under the following state of facts: Matheson & Co., in October, 1887, directed their London agents, Barnes & Co., to purchase a quantity of the patented color, if it could be bought of the parties who held the United States patents without restrictions against export to this country. The defendants knew that these restrictions were apt to be imposed. Barnes & Co. applied to the Bayer Company, who replied that their product was engaged for two months, but would deliver the color as soon thereafter as practicable. In a day or two the Bayer Company telegraphed to Barnes & Co., inquiring for whom the color was designed, as, in case it was designed for America, they should decline to sell it without restrictions. Barnes & Co. then engaged Domeier & Co., of London, to buy in their own name, but for Barnes & Co., one ton of said patented color from the Berlin Company. At this time, Domeier, of said firm, was aware that the Berlin Company was in the habit of selling the goods under restrictions against importation into the United States, and was instructed by Barnes & Co. not to buy unless he could do so without

restrictions. On November 4, 1887, he ordered from Greeff & Co., of London, the agents of the Berlin Company, one ton of the patented color. The order contained the words "strong for export." On November 15th, Greeff & Co. notified Domeier & Co. that they should send the invoice and bill of lading in the course of the day, and would like them to have a check ready for the amount of the bill. The check was drawn by a clerk, was signed by Domeier, was given to the clerk to deliver to Greeff and Co. upon receipt of the invoice, and upon such receipt was delivered accordingly, on November 15th, by the clerk. The invoice contained the following words, in German: "The importation into the U. S. of North America of our patented substantive cotton dye-stuffs, congo, benzo-purpurine, etc., is prohibited." The goods were marked with a label as follows: "The importation into the United States of North America is forbidden." No notice of any restriction upon the sale or destination of these goods was given to Domeier & Co. until the notice which was contained upon the invoice, and Domeier did not know of the contents of the invoice or of the label till he was informed by his clerk of the notice upon the invoice, from one to three days after November 15th. Greeff & Co. supposed that the goods were to be used in England.

When Domeier & Co. delivered to Barnes & Co. does not appear, but on November 22d the latter wrote to the defendants that they had received the ton. It was shipped to the defendants on November 25th.

It is apparent that the defendants and Barnes & Co. were anxious to obtain the patented color without the restrictions which they knew were customary; that, failing in the attempt to purchase from the Bayer Company, Barnes & Co. sought to use Domeier & Co., in the hope that they might purchase, without an announcement of restrictions, from the Berlin Company; that, when the order was executed by sending the invoice and the goods, the restrictions were announced upon each; that Domeier, who knew of the customary method of selling these colors, upon receiving notice that the papers had arrived and were to be delivered, left a signed check with his clerk to deliver upon receipt of the invoice. The defendants think that their attempt to obtain a purchase without restrictions was successful, because an affirmative announcement of these conditions was not made until the invoice was presented and the sale was consummated, and because, in Domeier's absence, the clerk who had been intrusted with the check was the only person who saw the invoice.

Upon this branch of the case, the circuit court well said:

"If such propositions are to receive the sanction of the courts, it will be well-nigh impossible to carry on the business of commerce. A person cannot avoid responsibility by closing his eyes and ears, and delegating his business to others. If Domeier & Co. would have been bound by the notice of restriction, had Domeier personally received the invoice in exchange for the check, the firm is equally bound by the action of their clerk. The clerk stood in the place and stead of Domeier & Co., and represented them, in that transaction."

The clerk to whom was intrusted the business of receiving and examining the invoice and bill of lading, and delivering the check in payment for the goods, must, in the absence of any evidence to the contrary, or of circumstances which repelled the idea of his knowledge of the contents of the paper, be presumed to have acquainted himself with the contents of the papers which he was to receive in exchange for the check, and, by accepting them, to have assented to the conditions of sale which they contained. It is to be observed that the invoice was not a mere notice or receipt, and was a paper which, from the nature of the business, must be expected to contain the terms of the contract of sale. Belger v. Dinsmore, 51 N. Y. 166; Kirkland v. Dinsmore, 62 N. Y. 171; Blossom v. Dodd, 43 N. Y. 264. The fact that the order of Domeier contained the words "strong for export" is commented upon by the defendants as containing a notice to the Berlin Company that the goods were to be exported; but those words, when addressed by a London firm to a German manufacturer, cannot indicate that the goods are to be exported to the United States. The attempt of the defendants' agents to buy and export into the United States a quantity of the patented color, freed from a positive restriction against such exportation, was a somewhat careful one; but the argument in favor of its success now rests upon the absence of Domeier from his place of business when the order for the goods was executed, and upon his lack of knowledge of the contents of the invoice. That argument, for the reasons already given, is insufficient.

The question as to the effect of the restriction remains. A purchaser in a foreign country, of an article patented in that country and also in the United States, from the owner of each patent, or from a licensee under each patent, who purchases without any restrictions upon the extent of his use or power of sale, acquires an unrestricted ownership in the article, and can use or sell it in this country. The cases which have been heretofore decided by the supreme court in regard to the unrestricted ownership by purchasers in this country of articles patented in this country, and sold to such purchasers without limitation or condition, lead up to this principle. Bloomer v. Millinger, 1 Wall. 340, 351; Mitchell v. Hawley, 16 Wall. 544, 548; Paper-Bag Cases, 105 U. S. 770; Holiday v. Mattheson, 24 Fed. Rep. 185. A purchaser in a foreign country of an article patented in that country and also in the United States, from a licensee under the foreign patent only, does not give the purchaser a right to import the article into, and to sell it in, the United States, without the license or consent of the owner of the United States patent. Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. Rep. 378. In the Graff Case, a dealer in this country purchased in Germany articles patented there and also in the United States, from a person authorized to sell them in Germany, but authorized only under the German patent, or under the imperial patent laws of Germany, in regard to the sales of articles patented in that country. The supreme court held that the

right of this vendor to make and sell the articles in Germany was one allowed him under the laws of that country, and did not authorize purchasers from him to sell the article in this country without the consent of the owner of the United States patent. Had Domeier obtained consent to import into the United States from the Berlin Company, which had the right to sell both under the United States and the German patents, the right of the defendants to use and sell the color would also have been unrestricted.

The appellants contend that, in an examination of the facts of this case, no attention should have been paid to the statement of the testimony contained in a written stipulation signed by the respective counsel, unless the affidavit of Mitchell, a partner of Barnes & Co., should also have been admitted. On January 16, 1890, the respective counsel stipulated, "in order to save delay and expense of a commission to England and Germany," that on the final hearing "it shall be taken as though the following testimony had been given." Then followed a statement of sundry alleged facts. On the same day a joint letter, signed by the respective counsel, was sent to Greeff & Co. and to Barnes & Co., which, after reciting the facts of the controversy, was as follows:

"The facts concerning said sale have been mutually agreed upon in a stipulation between the undersigned, excepting the question as to whether, at the time of the payment for or receipt of the invoice of these 2,000 pounds of benzo-purpurine, Domeier & Company objected to or commented upon the restriction clause of the invoice upon the grounds that the goods were bought without restriction. We mutually desire, in the case, to obtain Mr. Domeier's statement of the facts in this matter; and we request you, therefore, jointly, to see Mr. Domeier, and obtain from him such statement, in the form of an affidavit, for use in the case here. If Mr. Domeier's recollection does not correspond with the recollection of Mr. Greeff, or his representative in the transaction, then we request Mr. Greeff or his representative to make also his statement in writing, duly sworn to, of his recollection of the facts, and return said statement or statements to this address at your earliest convenience."

The affidavits of Domeier and Greeff were not obtained in reply to this letter, but William A. Mitchell, a member of the firm of Barnes & Co., made an affidavit on October 31, 1891, that on or about February 12, 1890, at a meeting between Domeier, Greeff, Deissner, who represented the Bayer Company, and himself, the first two named persons made statements in regard to the said sale which Mitchell swears to. This is not the affidavit which was requested in the joint letter, but is an affidavit of Mitchell as to the unsworn statements of Domeier and Greeff, and was manifestly hearsay. It is urged that the use of the stipulation was contingent upon obtaining the affidavits named in the joint letter, and that, they not having been obtained, the stipulation should be excluded. Nothing in the stipulation, or in the surrounding circumstances at the time it was drawn, or in the joint letter, indicates that its use was contingent upon obtaining the affidavits. In pursuance of a commission taken out May 27, 1891, Domeier and Greeff gave their depositions in the presence of the respective

counsel, and were cross-examined. These depositions were taken about October 31, 1891, and rendered affidavits entirely unnecessary.

The decree of the circuit court is affirmed, with costs.