### DICKERSON v. TINLING.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

#### No. 935.

1. PATENTS—INFRINGEMENT—SALE OF PATENTED ARTICLES PURCHASED ABROAD.
One purchasing in a foreign country an article protected by a United States patent, from persons other than the owner of the United States patent or his vendees, cannot import and sell the same in this country without infringing the United States patent.

2. SAME.
One purchasing in a foreign country, from the owners of a United States patent, patented goods having marked upon them a condition that they should not be imported into the United States, cannot import and sell them here without being guilty of infringement.          ...  ..

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a suit by Edward N. Dickerson against Hugh L. Tinling for alleged infringement of a patent. The court below denied a motion for preliminary injunction, and the plaintiff thereupon appealed to this court.

Edward N. Dickerson (Anthony Gref and James H. Brown, on the brief), in pro. per.

Sam B. Berry, for appellee.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order denying a motion for a preliminary injunction to restrain the defendant from infringing letters patent No. 400,086, issued March 26, 1889, to the Farbenfabriken, vormals Friedr. Bayer & Co., a corporation of Germany, hereafter called Bayer & Co., as assignee of Oskar Hinsberg. The letters patent secure to Bayer & Co. the monopoly of the manufacture and sale of phenacetine or paracet-phenetidine in the United States. The appellant, Edward N. Dickerson, alleged in his bill that these letters patent had been issued and assigned to him, and that the appellee was infringing upon his rights by vending in the United States the improvement described in the patent. The appellee answered that Bayer & Co. was the sole owner and manufacturer of phenacetine, which he averred was the same substance which was manufactured by others in Germany and elsewhere as paracet-phenetidine; that Bayer & Co. was the real owner of the patent in suit, and the appellant was its agent, and held the assignment of all rights under the patent for its benefit; that the appellee had been informed and believed that about March 26, 1889, Bayer & Co., or Hinsberg for them, "obtained a patent on, or registered, in the German empire, this same 'phenacetine,'" and that the German patent or registration had expired, or been rendered void by the authorities of the German empire, and "that he, in common with many citizens of the United States has bought small quantities of said 'phenacetine' from persons outside of the United States, who had perfect and legal right to deal in the same, being the legal purchasers and sellers thereof, and that he has brought the same into the United States, and that he has resold a small quantity thereof in the United States for a legitimate profit." The answer contains some other allegations, but none that are material to the issue, and it contains no other denial of infringement. To this answer the appellant filed the usual replication, and upon these pleadings and certain affidavits, from which it appears that no patent had ever been issued in Germany, as alleged in the answer, and that every package of phenacetine that had ever been sold by Bayer & Co. in a foreign country had a prohibition against its importation into and sale within the United States printed upon it, and was sold subject to that prohibition, the motion for the temporary injunction was heard and denied.

If it were conceded that Bayer & Co. is the real owner of the let-

ters patent in suit, as alleged in the answer, it would be difficult, upon the facts disclosed by this record, to justify a sale of phenacetine in the United States by this appellee. Section 4884 of the Revised Statutes provides that "every patent shall contain * * * a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States, and the territories thereof." The answer avers that the appellee bought the phenacetine he is selling in a foreign country, either from Bayer & Co., or from others who had a legal right to sell it in that country. He must have bought it, therefore, of Bayer & Co., or their vendees, or of others. If he bought it of others than Bayer & Co. or their vendees, he bought with it no right to sell it in the United States, because no one but Bayer & Co. and their vendees had that right in this country. The right to sell the patented article in the United States is not governed by the laws of Germany or of England, but by the laws of this nation; and under those laws and the patent before us Bayer & Co. has the "exclusive right to make, use and vend" phenacetine in the United States. Thus, in Boesch v. Graff, 133 U. S. 697, 703, 10 Sup. Ct. 378, a case in which the defendant had purchased in Germany, from one Hecht, who had the legal right to sell them there, certain burners, which had been patented in both Germany and the United States, Chief Justice Fuller said:

"The right which Hecht had to make and sell the burners in Germany was allowed him under the laws of that country, and purchasers from him could not be thereby authorized to sell the articles in the United States, in defiance of the rights of the patentees under a United States patent."

The cases of Adams v. Burke, 17 Wall. 453, 456; Hobbie v. Jennison, 149 U. S. 355, 362, 13 Sup. Ct. 879, and Keeler v. Folding-Bed Co., 157 U. S. 659, 664, 15 Sup. Ct. 738, in which it was held that one who purchases patented articles of a territorial assignee within the district of the United States assigned to him, may sell them again in the territory owned by another, do not rule the case in hand. They rest upon the principle that one who buys the patented article of a party who is legally empowered to sell it under the patent has once paid tribute to the monopoly, and has thereby acquired the right to use and sell the article he buys elsewhere within the United States. But one who purchases in a foreign country, of others than the owners of the United States patent or their vendees, pays nothing, either directly or indirectly, to the owners of the patent, and therefore he acquires no right to make, use, or vend the article which he buys within the territorial limits of their monopoly. It follows that, if the appellee bought the phenacetine he is selling of others than Bayer & Co., or its vendees, he is infringing upon the exclusive right of this patentee, and an injunction should issue.

On the other hand, if the appellee bought the phenacetine he is selling in a foreign country from Bayer & Co., or from its vendees, subject to the express condition that it should not be imported into the United States, or sold within their limits, the exclusive right to sell the patented article within the United States which was granted to Bayer & Co. by the patent was not abridged by that purchase.

Conceding—but not deciding—that one who buys a patented article without restriction in a foreign country from the owner of the United States patent has the right to use and vend it in this country upon the general principle that a patented article purchased from the patentee passes without the limit of the monopoly (Holiday v. Mattheson, 24 Fed. 185; Dickerson v. Matheson, 6 C. C. A. 466, 57 Fed. 524, 527), there can be no doubt that a patentee has the same right and power to sell the patented article upon conditions or with restrictions that he has to sell it at all. Bayer & Co. had the right to sell its phenace-tine in Germany without restriction. It had an equal right to sell it subject to the limitation that it should not be sold or used in any way that would curtail or affect the exclusive right which that corporation held under this patent to make, use, and vend the phenacetine in the United States. If the corporation sold the patented article subject to such a restriction, the purchasers, with notice of this limitation, whether immediate or remote, could acquire no better right than strangers to infringe upon the monopoly secured by the patent. That monopoly would still remain intact, and purchasers of the phen-acetine which had been sold under the restriction must be liable for its use and sale in the United States to the same extent as those who made it or bought it of strangers within their limits. Dickerson v. Matheson, 6 C. C. A. 466, 57 Fed. 524, 526, 528; Id., 50 Fed. 73, 77; Id., 47 Fed. 319. The record is that every package of this article sold by Bayer & Co. in a foreign country was sold on the express condition that it should not be imported into or sold within the United States, and that this prohibition was plainly printed upon every package. The necessary result is that, whether the appellee bought in a foreign country the phenacetine which he is now selling in the state of Colorado from Bayer & Co., or its vendees, subject to this restriction, or from others without restriction, he is alike an infringer upon the exclusive right to make, use, and vend the phenacetine within the United States, which was granted to this corporation by the letters patent. The order denying the motion for a temporary injunction must accordingly be reversed, and the case must be re-manded to the court below, with directions to issue the injunction, and it is so ordered.