EDISON PHONOGRAPH CO. et al. v. PIKE.

(Circuit Court, D. Massachusetts. June 24, 1902.)

No. 1,583.

1. PATENTS—INFRINGEMENT—RIGHT TO ATTACH CONDITIONS TO LICENSE.

The owner of certain patents granted licenses to use and vend the patented articles, in which the licensees agreed not to sell such articles for less than the price fixed by the licensor, and not to sell to any one who did not sign a similar agreement. The contract contained a further condition that as to any of the patented articles sold in violation of its terms the license should be void, and that any vender or user of such articles thereafter should be an infringer of the patents. *Held*, that such condition was valid, and that the sale or use of the patented articles by one who purchased them from a licensee with knowledge of the terms of the contract, and without signing the agreement thereby required, constituted an infringement.

In Equity. On demurrer to bill.

Howard W. Hayes, for complainants.

Winter S. Martin, for defendant.

LOWELL, District Judge. The bill alleges: That the complainant is the owner of letters patent Nos. 382,418 and 386,974 for improvements in phonographs and phonograph records. That the Eastern Talking Machine Company entered into a contract with the complainant to conform to and be bound by the terms of a certain paper. This forbade the Eastern Talking Machine Company to sell the patented phonographs and records below certain scheduled prices, and contained the following additional clauses:

"(5) Jobbers must not sell or supply, either directly or indirectly, Edison phonographs or parts thereof, records, or blanks, to any dealer who will not sign the agreement governing and controlling the sale of same, nor to dealers who are on our suspended list."

"(11) All Edison phonographs, records, and blanks are covered by United States patents, and are sold under the condition that the license to use and vend them implied from such sale is dependent on the observance by the vendee of all the foregoing conditions. Upon the breach of any of said conditions the license to use or vend said phonographs, records, and blanks immediately ceases, and any vender or user thereafter becomes an infringer of said patents, and may be proceeded against by suit for injunction or damages, or both."

That the Eastern Talking Machine Company purchased from the complainant phonographs and records, the latter contained in boxes, each marked as follows:

"*Notice to Dealers:* This record is sold subject to restrictions as to the persons to and the prices at which it may be sold. Any violation of such restrictions makes the seller or user an infringer of the Edison patents."

That the defendant knew of the said agreement, and the restrictions contained therein, and, having such knowledge, and without signing the agreement, bought from the Eastern Talking Machine Company phonographs and records, and sold the same. That the defendant has in his possession phonographs and records purchased not only from the Eastern Talking Machine Company, but from other

vendees of the complainant bound by similar agreements (and this without the petitioner's having signed the required agreement), which last-mentioned phonographs and records the petitioner is using, vending, and threatening to use and vend. Wherefore the defendant is guilty of infringement of the patents in question. The bill does not allege that the defendant has cut rates, or has sold below the scheduled price. The defendant has demurred to the bill for want of equity. The other grounds stated in his demurrer were abandoned at the hearing. The plaintiff contends that it can sell patented goods under restrictions such, that, if a purchaser fails to observe them, he becomes liable as infringer, and the patented goods are no longer covered by the license contained in the original sale. The plaintiff further contends that a purchaser of patented goods so sold, who has knowledge that their sale to him violates the restriction, is deemed to have bought patented goods sold without right by an infringer, and so, on using or selling them himself, becomes an infringer also.

The extent to which restrictions can be placed by a patentee upon the use of patented goods sold by him is not clearly settled. In Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378, 33 L. Ed. 787, the supreme court decided that the purchaser in Germany of goods covered by a German patent could not sell them in the United States if they were also covered by a United States patent. In Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879, 37 L. Ed. 766, that court decided that the assignee of a patent right for the state of Michigan could sell goods in Michigan even though he knew that the goods were to be used in Connecticut, a state for which he owned no right under the patent. In Keeler v. Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848, the court decided that the purchaser of patented goods in one state from the owner of the patent for that state could sell the same in any other state, even though the territorial ownership of the patent in the latter state was vested in another person. The upshot of these cases appears to be that the owner of a patent right for one part of the United States cannot prevent the sale within his territory of goods covered by the patent, provided the seller has procured the goods in another state, from one who has the right to sell them in the latter. The mere territorial ownership of a patent would seem to give the owner little more than the right to sue in his own name persons selling or using within his territory in total defiance of the patent. He is not freed from competition with one who imports into and sells in his territory patented goods lawfully procured. These cases in the supreme court, however, are concerned only with the rights of a mere territorial owner as against one who has bought the goods outright, and without any contractual restriction. In the last-mentioned case the court said:

"Whether a patentee may protect himself and his assignees by special contracts brought home to the purchasers is not a question before us, and upon which we express no opinion. It is, however, obvious that such a question would arise as a question of contract, and not as one under the inherent meaning and effect of the patent laws." Keeler v. Folding Bed Co., 157 U. S. 666, 15 Sup. Ct. 741, 39 L. Ed. 848.

If the last sentence means that the special contracts alluded to can be enforced only like any other contract, viz., by an action at law for a breach, or by a bill in equity for specific performance, the dictum disposes of the case at bar. See Harrison v. Maynard, Merrill & Co., 10 C. C. A. 17, 61 Fed. 689. But it is not clear that the supreme court meant to exclude the possibility of a contract so drawn that by virtue of a special stipulation therein contained a breach of the contract should, in and of itself, make the wrongdoer an infringer, who could be proceeded against under the patent laws.

Some circuit courts of appeals have gone much further than the supreme court. In Dickerson v. Matheson, 6 C. C. A. 466, 57 Fed. 526, the circuit court of appeals for the Second circuit held that the owner of two patents for the same article, one German and the other American, who sold the patented article in Germany with a restriction against its use in this country, could sue for infringement the purchaser who used it in this country. In Dickerson v. Tingling, 28 C. C. A. 139, 84 Fed. 192, the circuit court of appeals for the Eighth circuit followed Dickerson v. Matheson. In Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, 47 U. S. App. 146, 35 L. R. A. 728, a patented button-fastening machine was sold with the condition that if it was used with fasteners made by any person other than the vendor and owner of the patent the title to it should revert. The circuit court of appeals for the Sixth circuit held that a purchaser violating the condition could be sued for infringement, upon the ground that any restriction might be imposed by the patentee which was not against public policy. This case is strong authority for the complainant's contention in the case at bar. See Phonograph Co. v. Kaufmann (C. C.) 105 Fed. 960; Featherstone v. Cycle Co. (C. C.) 53 Fed. 111; Electric Light Co. v. Goelet (C. C.) 65 Fed. 613; Cortelyou v. Lowe, 49 C. C. A. 671, 111 Fed. 1005; Wiggin v. Shoe Co., 161 Mass. 599, 37 N. E. 752. In Bement v. Harrow Co. (in the supreme court May 19, 1902) 22 Sup. Ct. 747, 46 L. Ed. ——, the question was whether certain terms of a license to manufacture and sell patented harrows (including the establishment of a minimum price and an agreement not to make or sell any harrows other than those patented) constituted a violation of the federal anti-trust law. The supreme court said:

"In Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, 47 U. S. App. 146, 160, it is stated regarding a patentee: 'If he sees fit, he may reserve to himself the exclusive use of his invention or discovery. If he will neither use his device nor permit others to use it, he has but suppressed his own. That the grant is made upon the reasonable expectation that he will either put his invention to practical use or permit others to avail themselves of it upon reasonable terms, is doubtless true. This expectation is based alone upon the supposition that the patentee's interest will induce him to use, or let others use, his invention. The public has retained no other security to enforce such expectations. A suppression can endure but for the life of the patent, and the disclosure he has made will enable all to enjoy the fruit of his genius. His title is exclusive, and so clearly within the constitutional provisions in respect of private property that he is neither bound to use his discovery himself nor permit others to use it. The dictum found in Hoe v. Knap (C. C.) 17 Fed. 204, is not supported by reason or authority.' It is true, in certain circumstances the sale of articles

116 F.—55

manufactured under letters patent may be prevented when the use of such article may be subject, within the several states, to the control which they may respectively impose in the legitimate exercise of their powers over their purely domestic affairs, whether of internal commerce or of police regulation. Thus an improvement for burning oil, protected by letters patent of the United States, was condemned by the state inspector of Kentucky as unsafe for illuminating purposes under the statute requiring an inspection and imposing a penalty for the violation of the statute, and it was held that the enforcement of the statute was within the proper police powers of the state, and that it interfered with no right conferred by the letters patent. Patterson v. Kentucky, 97 U. S. 501, 24 L. Ed. 1115. There are decisions, also, in regard to telephone companies operating under licenses from patentees giving them the right to use their patents for the purpose of operating public telephone lines, but prohibiting companies from serving within such district any telephone company, and it has been held in the lower federal courts that such prohibition was of no force; that it was inconsistent with the grant, because a telephone company, being in the nature of a common carrier, was bound to render an equal service to all who applied and tendered the compensation fixed by law for the service; that, while the patentees were under no obligation to license the use of their inventions by any public telephone company, yet, having done so, they were not at liberty to place restraints upon such a public corporation which would disable it to discharge all the duties imposed upon companies engaged in the discharge of duties subject to regulation by law. It could not be a public telephone company, and could not exercise the franchise of a common carrier of messages, with such exception to the grant. See Missouri v. Bell Tel. Co. (C. C.) 23 Fed. 539; Delaware v. Delaware & A. Telegraph & Telephone Co. (C. C.) 47 Fed. 633; and Delaware & A. Telegraph & Telephone Co. v. Delaware, 2 C. C. A. 1, 50 Fed. 677, 3 U. S. App. 30. These cases are cited in the opinion of the court in the case of Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., supra. Notwithstanding these exceptions, the general rule is absolute freedom in the use or sale of rights under the patent laws of the United States. The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee, for the right to manufacture or use or sell the article, will be upheld by the courts. The fact that the conditions in the contracts keep up the monopoly or fix prices does not render them illegal. * * * In these contracts provision is expressly made, not alone for manufacture, but for the sale, of the manufactured product throughout the United States, and at prices which are particularly stated, and which the seller is not at liberty to decrease without the assent of the licensor. Addystone Pipe & Steel Co. v. U. S., 175 U. S. 211, 238, 20 Sup. Ct. 96, 44 L. Ed. 136. These contracts directly affected, not as a mere incident of manufacture, the sale of the implements all over the country, and the question arising is whether the contracts which thus affect such sales are void under the act of congress. On looking through these licenses, we have been unable to find any conditions contained therein rendering the agreement void because of a violation of that act. There had been, as the referee finds, a large amount of litigation between the many parties claiming to own various patents covering these implements. Suits for infringements and for injunction had been frequent, and it was desirable to prevent them in the future. The execution of these contracts did in fact settle a large amount of litigation regarding the validity of many patents as found by the referee. This was a legitimate and desirable result in itself. The provision in regard to the price at which the licensee would sell the article manufactured under the license was also an appropriate and reasonable condition. It tended to keep up the price of the implements manufactured and sold, but that was only recognizing the nature of the property dealt in, and providing for its value so far as possible. This the parties were legally entitled to do. The owner of a patented article can, of course, charge such price as he may choose, and the owner of a patent may assign it or sell the right to manufacture and sell the article patented upon the condition that the assignee shall charge a certain amount for such article."

It is true that the supreme court, in Bement v. Harrow Co., decided only that a restriction imposed by a patentee upon his vendee that the latter should keep up prices was legal. The supreme court did not decide that the restriction could be so drawn as to make one who violated it guilty of infringement. But this was decided in Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., and the supreme court has cited that case with unqualified approval. I think, therefore, that this court is bound to hold that the Eastern Talking Machine Company, by selling pronographs to the defendant in violation of its agreement with the complainant, became guilty of infringement, and that by reason of this sale the patented phonographs so sold were no longer covered by the license originally granted to the Eastern Talking Machine Company. In selling these phonographs, now unlicensed, the defendant, who bought them with the knowledge of the restriction and of its breach, is also an infringer. If, therefore, the allegations of the bill are true, the complainant has good cause of action, and so the demurrer is overruled; defendant to answer on or before August rule day.