### VICTOR TALKING MACH. CO. et al. v. THE FAIR.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1903.)

#### No. 946.

1. JURISDICTION OF FEDERAL COURTS—SUIT ARISING UNDER PATENT LAWS.

A suit for an injunction and accounting for the alleged infringement of a patent by the sale of the patented article without license is one arising under the patent laws, of which a Circuit Court of the United States has jurisdiction, although the determination of the question of infringement may also involve the construction or validity of a license contract under which defendant claims the right to sell.

2. PATENTS—INFRINGEMENT—RIGHT TO ATTACH CONDITIONS TO LICENSE.

The owner of a patent who manufactures and sells the patented article may reserve to himself, as an ungranted part of his monopoly, the right to fix and control the prices at which jobbers or dealers buying from him may sell to the public, and a dealer who buys from a jobber with knowledge of such reservation, and resells in violation of it, is an infringer of the patent.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Appellants' bill alleges that they own all legal and equitable rights under letters patent No. 534,543, issued February 19, 1895, on the application of Emile Berlinger, and that appellee without license sold, and after notice to desist threatens to continue to sell, devices that embody the invention described and claimed in the patent. After other averments usual in the ordinary bill for infringement appears a prayer for decree for a preliminary and a perpetual injunction and an accounting of profits and damages. In the body of the bill, however, it is disclosed that appellants made the gramophones in question; affixed to each a notice in these words: "Notice. This machine, which is registered on our books No. ———, is licensed by us for sale and use only when sold to the public at a price not less than $———. No license is granted to use this machine when sold at a less price. Any sale or use of this machine when sold in violation of this condition will be considered as an infringement of our United States patents under which this machine and records used in connection therewith are constructed, and all parties so selling or using this machine contrary to the terms of this license will be treated as infringers of said patents, and will render themselves liable to suit and damages. This license is good only so long as this label and the above-noted registered number remain upon the machine, and erasures, or removal of this label, will be construed as a violation of the license. A purchase is an acceptance of these conditions. All rights revert to the undersigned in the event of any violation. Victor Talking Machine Co.;" filled in the blanks on each notice with the appropriate number and the price, $25; and sold them to a jobber subject to all the restrictions set forth in the notice, which restrictions the jobber accepted and agreed to at the time of the purchase. It is also averred that appellee, proprietor of a department store in Chicago, having at the time full knowledge of the restrictions under which the jobber took the machines, purchased and acquired possession of

them, with the labels conspicuously attached thereto, from the jobber; advertised them for sale at $18 each; and sold some and insisted upon its right to sell the others at the cut price.

Appellee demurred and for causes assigned that the bill showed (1) that appellee had the right to sell the machines at any price it chose, and (2) that appellants' cause of action, if any, arose through the violation of a contract, and not through the infringement of a patent. The court sustained the demurrer, and upon appellants' refusal to plead further the decree was rendered from which this appeal is taken.

Horace Pettit, for appellants.
Walter Chamberlin, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). 1. Concerning jurisdiction: When a contract is made respecting a right under a patent, and the parties get into litigation, confusion has sometimes arisen over the question whether the cause of action originates in the contract or in the patent laws. The test is this: If the plaintiff is seeking a judgment for debt or damages, or a decree for cancellation or specific performance, on account of the defendant's breach of his covenants, the cause of action arises out of the contract; and, though the determination of the issue of breach or no breach may involve the interpretation of the patent and of the prior art, the insistence of the defendant that his device, according to the true construction of the patent and of the prior art, is not within the patent right granted him in the contract, cannot change the nature of the action. Standard Sewing Machine Co. v. Leslie, 118 Fed. 557, 55 C. C. A. 323. On the other hand, if the plaintiff is seeking a judgment for damages, or a decree for an injunction and an acounting, on acount of the defendant's unauthorized use of the patent right in making or using or selling the device without license, the cause of action arises out of the patent laws; and, though the determination of the issue of infringement or no infringement may involve the interpretation of the contract, the insistence of the defendant that his act was within his rights under the contract, if properly construed, cannot change the nature of the action. We think the rule as stated is clearly deducible from the authorities. Mr. Chief Justice Taney's statement of the nature of the bill in Wilson v. Sanford, 10 How. 99, 13 L. Ed. 344, points out the class to which that action belongs:

"The object of the bill is to have this contract set aside and declared to be forfeited; and the prayer is 'that the appellant's re-investiture of title to the license granted to the appellees, by reason of the forfeiture of the contract, may be sanctioned by the court,' and for an injunction. But the injunction he asks for is to be the consequence of the decree of the court sanctioning the forfeiture. He alleges no ground for an injunction unless the contract is set aside."

If, however, the patentee had been suing, not to have the contract annulled, but to restrain the defendants from using a part of his monopoly that had never been granted them, the language of Mr. Chief Justice Waite in Littlefield v. Perry, 21 Wall. 205, 222, 22 L. Ed. 577, would characterize the class:

"An action which raises a question of infringement is an action arising 'under the law,' and one who has the right to sue for infringement may sue in the Circuit Court. Such a suit may involve the construction of the contract as well as the patent, but that will not oust the court of its jurisdiction."

And in this connection, see, further, Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U. S. 282, 22 Sup. Ct. 681, 46 L. Ed. 910; Atherton Machine Co. v. Atwood-Morrison Co., 102 Fed. 949, 43 C. C. A. 72; Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 58 Fed. 818, 7 C. C. A. 498; Seibert Cylinder Oil Cup Co. v. Manning (C. C.) 32 Fed. 625.

In the present case it is hardly conceivable that the question of jurisdiction would have been broached if appellants had confined themselves to drafting and filing a straight bill for infringement. But again, the defense, whether put in by the defendant or by the plaintiff for him, cannot change the nature of the action.

2. The merits: Without applying to the Patent Office, one may make and use and sell the device that embodies his invention. That is his natural right. All that the government can and does grant him is the right to exclude others from practicing his invention without his consent. Within his domain, the patentee is czar. The people must take the invention on the terms he dictates or let it alone for 17 years. This is a necessity from the nature of the grant. Cries of restraint of trade and impairment of the freedom of sales are unavailing, because for the promotion of the useful arts the constitution and statutes authorize this very monopoly.

By its terms, the grant covers three separate or separable fields. The patentee may agree with one that he will not exclude him from making, with another from using, and with yet another from selling devices that exemplify the principles of his invention. Within the field of making, it has never been doubted, so far as we are aware, that he may subdivide as he pleases and offer to sell or lease in the most fanciful parcels on the harshest terms; that whether purchasers and tenants come or not is purely his own concern; and that, if purchasers or tenants do come, the courts will enforce the terms of the sale or lease. And how could it be otherwise? Owning the whole, he owns every part. The field being his property, and there being no law for seizing it and adjudging his damages, he cannot be compelled to part with his own except on inducements to his liking. The same conditions must prevail within the field of use, for how can it be distinguished? And the Circuit Court of Appeals for the Sixth Circuit, in a case we thoroughly approve (Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728), has ruled that a patentee may farm out such a part of the field of use as he pleases and retain the balance, and that whoever without permission enters the reserved portion is an infringer. This case has been followed and approved by the Circuit Court of Appeals for the Second Circuit in Cortelyou v. Lowe, 111 Fed. 1005, 49 C. C. A. 671. The field of sale is as much within the monopoly as the others, and so it has been decided. Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058. And in Edison Phonograph Co. v. Kaufmann (C. C.) 105 Fed. 960, and Same v. Pike (C. C.) 116 Fed.

863, the holdings were that a patentee may reserve to himself as an ungranted part of his monopoly of sale the right to fix and control the prices at which jobbers and dealers may sell the patented article to the public, and that whoever without permission enters the reserved portion is an infringer.

In the present case, the vice of counsel's argument lies in the assumption that the jobber by paying his money to appellants acquired such an unrestricted title to the machines in question that appellee could take them and fix its own prices in offering them for sale to the public. The bill very clearly shows that appellants said to the jobber: "We are unwilling to part with the whole of our monopoly. There are no terms on which we will give you an unrestricted right to deal in our machines. However, if you choose to pay our price for a limited right, we will place our machines in your hands to be sold by you or by dealers under you to the public at not less than $25 each"— and that the jobber explicitly accepted this offer. It is axiomatic in all departments of the law that unless the quality of innocence intervenes the title of the purchaser is no better than his seller's. The bill directly charges appellee, a dealer, with prior knowledge of the terms on which the jobber came into possession of the machines. Whether or not appellee covenanted to be bound by the terms is not alleged, and whether or not an implied promise arose from appellee's purchase is immaterial in this case, for the suit is not upon a promise to keep out of the reserved portion of the monopoly, but is for the trespass in entering without permission.

It is perhaps needless to observe that what the rights of the public who purchase at $25 may be with respect to reselling is a question not involved.

The decree is reversed, with the direction to overrule the demurrer to the bill.