DR. MILES MEDICAL CO. v. PLATT. WORLD'S DISPENSARY MEDICAL ASS'N v. SAME. HARTMAN v. SAME.

(Circuit Court, N. D. Illinois, E. D. January 19, 1906.)

Nos. 27,492, 27,569, 27,588.

1. CONTRACTS—LEGALITY—CONDITIONS IN SALE OF PROPRIETARY MEDICINES.

The manufacturer of an article sold as a medicine and made under a secret process or formula of which he is the sole owner may sell such article or withhold it from sale at his pleasure, may sell to one and not to another, and may lawfully, by contracts with purchasers, impose such conditions as he sees fit with respect to the prices at which it shall be sold to others or the persons to whom it may be sold.

2. INJUNCTION—INDUCING VIOLATION OF CONTRACT—DEFENSES.

In a suit by the manufacturer of an article made in accordance with a secret formula to enjoin the defendant from attempting to induce persons to whom complainant sells such article to violate the contracts under which such sales are made, as an infringement or violation of complainant's property rights, an answer setting up that complainant has entered into an unlawful conspiracy with others to maintain the price of such article and others of like character, and prevent competition in their sale, states no defense, since the right sought to be protected does not arise out of, and is in no way dependant upon, such alleged conspiracy.

In Equity. On exceptions to answers.

F. F. Reed and E. S. Rogers, for complainants.
A. E. Gammage and Chas. E. Soelke, for defendant.

KOHLSAAT, Circuit Judge. The first bill above mentioned is to restrain interference with complainant's system of marketing medicines made under secret formulas, on the theory that the complainant is the exclusive owner of the formulas, and has an absolute monopoly in the articles. The second action above is brought for similar relief, but the system of marketing is different. The third suit is similar to the first. The suits relate to what is known as the direct contract plan of marketing proprietary preparations. In the first case the wholesale contract is made, providing that the wholesale agent, in consideration of being supplied with the remedies at certain prices, agrees to sell the same only at certain prices, and only to people whom the Dr. Miles Company shall previously designate, and to fill out proper cards and slips, which are inclosed in packing cases, making the number on the slip correspond with the number on the package, and filling out in the body of the card the name of the purchaser. The names of the persons appearing on the card are those to whom only the company permits its goods to be sold by wholesalers. The retail agency contract provides, in consideration of being furnished with the preparations, both that the retail dealer will sell only at certain prices, and that he will not sell to any wholesale or retail dealer who has not entered into a similar contract with the company. In the second case the system differs somewhat from the foregoing. The association enters into contracts with wholesale distributors of its preparations, the latter agreeing to sell only at certain prices, and not to sell to persons whom the association may designate as not entitled to receive them; the purpose being to secure uniform prices, both wholesale and retail, enabling small dealers to compete successfully with large dealers, preventing demoralization of the trade by cutting the prices for advertising purposes, and to keep the preparations out of the hands of objectionable persons. The third case is similar to the first.

In the first case it is alleged in the bill that the defendant, Platt, at one time signed the retail agency contract, but that it was afterwards violated by him and canceled. Since then, not being an authorized retailer, he is not entitled to purchase complainant's goods on any terms, unless he agrees thereto, which he declines and refuses to do. It is then alleged that defendant, by personating a retail agent of complainant, and by other fraudulent practices, has caused complainant's wholesale agents to violate their contracts and supply the goods to him, and in collusion with some of the retail agents has also procured the goods, and by fraud, deception, persuasion, threats, and coercion has procured complainant's agents to violate the terms of their contract; that his methods are various, and consist in inducing retail dealers to sign contracts and deliver them to jobbers and wholesale druggists who contract with the complainant, then to order the remedies through them and turn them over to the defendant, in violation of the terms of the retail contracts; also of inducing and persuading retail druggists, under contract with complainant, to procure from jobbers and wholesale druggists, also under like contract, such remedies, and then to sell and supply them to the defendant in violation of

the contract with complainant, and by threats, coercion, intimidation, and duress causing wholesale druggists under contracts with complainant to break and violate the same. Defendant then sells the remedies at cut rates at his own store and supplies the same surreptitiously to others, who have not signed the contracts; thus demoralizing and injuring complainant's trade.

In the other two cases it is alleged that defendant is well advised of the system of contracts and sales of the complainant, and maliciously procured large quantities of complainant's medicines selling them at his own establishment at cut prices and supplying them in large quantities to dealers not entitled to receive them; that, upon learning of this conduct of the defendant, complainant designated defendant as a person not entitled to deal in its preparations. Therefore defendant cannot lawfully obtain complainant's preparations, but defendant has by fraud and persuasion and in other surreptitious ways procured large quantities of complainant's preparations from complainant's agents, in violation of their contracts with the complainant, and has also harassed and annoyed complainant's agents by constant calls upon them and demands for complainant's goods by threats, suits, and legal proceedings, in an endeavor to cause them to violate their contracts with complainant and supply him with its preparations. That defendant sells the goods so obtained to others, who are designated by complainant as not entitled to deal therein; that defendant has instituted a pretended suit in equity in the circuit court of Cook county, Ill., to compel complainant's agents to violate their contracts to supply complainant's goods to him; that this conduct is malicious and for the purpose of injuring complainant and destroying its system of contracts and method of sales. The bill seeks to enjoin defendant from inducing breaches of said contracts and prevent defendant from harassing and annoying complainant's agents by coercion, threats, legal proceedings, or otherwise. In the state court an injunction was refused by Judge Tuley, who sustained the lawful nature of the direct contract plan involved therein.

Exceptions are taken to certain allegations of the answer as immaterial and impertinent. These exceptions, in substance, are as follows: Complainant unlawfully, fraudulently, and maliciously combined, conspired, and confederated with a number of druggists to unlawfully and fraudulently fix and maintain an exhorbitant and arbitrary price for all kinds of medicines, remedies, and cures which are manufactured and sold in the United States under secret processes, and to unlawfully destroy, stifle, restrict, and prevent competition in the sale thereof, with intent thereby to compel the public to pay a higher price for such medicines, remedies, and cures than it would otherwise be required to pay. Pursuant to such conspiracy said persons put in force the contract, serial number, and card system, and put in force and published all over the country certain blacklisting and boycotting circulars, pamphlets, and lists containing the names of those drug dealers who refused to sign the contracts and become parties to the conspiracy; and dealers who have entered into

the contracts and consented to be governed by such system are warned against selling any of such medicines to any persons named in such blacklisting circulars. That the real object and purpose of said system is to maintain arbitrary and exhorbitant prices for all medicines, etc., manufactured under secret process, to prevent and stifle competition and exact a higher price than the public would otherwise be required to pay. That complainant unfairly discriminates among its customers, surreptitiously supplying with its medicines certain, but not all, of its customers and patrons who have signed such contracts, but who, as complainant well knows, have openly violated the contracts by cutting prices. That defendant signed the contract, but was compelled and induced to do so by threats, intimidation, coercion, and under duress by reason of said conspiracy. Defendant's inability to obtain such medicines is entirely due to the existence of the unlawful conspiracy, and complainant and its wholesalers refuse to sell any thereof to the defendant, and by means of threats, duress, undue influence, blacklisting, boycotting, coercion, and other unlawful ways and means, prevent defendant from purchasing any of said medicines. The real object and purpose of complainant's system and method is to prevent, suppress, destroy, and stifle competition among retail drug dealers, and compel the public to pay larger prices than under unrestricted competition; that, by means of threatening manufacturers of proprietary medicines with withdrawal of patronage of its members unless they adopt and put into effect said contract, serial number, and card system, complainant coerces manufacturers to adopt said system and become parties to said unlawful conspiracy. The matter in the answers to which exception is taken in the other two cases is substantially the same as just stated. In addition to this, some of the allegations excepted to in the last two cases do not apply to those cases, but by inadvertence were copied from the answer in the first case.

That the contract, serial number, and card system is valid and lawful is thoroughly settled by the authorities. The products being made under trade secrets of which complainants are the exclusive owners, and no other person having any interest in or right to the secret formulas under which the articles are made, or to the articles themselves, the manufacturers may withhold them entirely from sale, may sell them on such terms as they please, may withhold them from one person while selling to others, and may fix any price in their sole and exclusive discretion. This rule is abundantly settled. Dr. Miles Medical Co. v. Goldthwaite (C. C.) 133 Fed. 794; Tabor v. Hoffman (N. Y.) 23 N. E. 12, 16 Am. St. Rep. 740; Harrison v. Glucose Co., 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915; Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031; Garst v. Harris, 177 Mass. 72, 58 N. E. 174; Fowle v. Park, 131 U. S. 88, 97, 9 Sup. Ct. 658, 33 L. Ed. 67; Park & Sons Co. v. National Wholesale Druggists' Ass'n (N. Y.) 67 N. E. 136, 62 L. R. A. 632; Standard Fireproofing Co. v. St. Louis Co. (Mo. Sup.) 76 S. W. 1008, 1012; Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058; Victor Co. v. The Fair, 123

Fed. 424, 61 C. C. A. 58; Heaton-Peninsular Button Co. v. Eureka Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728; Cortelyou v. Lowe, 111 Fed. 1005, 49 C. C. A. 671; Dickerson v. Matheson, 57 Fed. 524, 6 C. C. A. 466; Bonsack Mach. Co. v. Smith (C. C.) 70 Fed. 383; Bowling v. Taylor (C. C.) 40 Fed. 404; Dickerson v. Tinling, 84 Fed. 192, 28 C. C. A. 139; Central Shade Co. v. Cushman, 143 Mass. 353, 9 N. E. 629; Gloucester Isinglass Co. v. Russia Cement Co., 154 Mass. 92, 27 N. E. 1005, 12 L. R. A. 563, 26 Am. St. Rep. 214; Good v. Daland, 121 N. Y. 1, 24 N. E. 15; Morse Twist Drill Co. v. Morse, 103 Mass. 73, 4 Am. Rep. 513; Hulse v. Machine Co., 65 Fed. 864, 13 C. C. A. 180.

But even assuming that an unlawful conspiracy or combination has been stated in the answer, and that complainants are parties to it, it is still no defense in this suit, because complainants do not in any way claim through or under the unlawful combination in this action. The alleged combination is collateral, and can be attacked only by a direct proceeding. These suits are brought for an infringement or violation of the property right of the complainants in the secret process owned or controlled by them. The right of a patentee, owner of a copyright, or owner of a secret process is merely the right of exclusion or debarment. The holder of such a property right, as said by the court in the Victor Talking Machine Case, above cited, is a czar in his own domain. He may sell or not, as he chooses. He may fix such prices as he pleases. He may sell at one price to one person, and another to another person. He is not required to give reasons or deal fairly with purchasers. Why is it material, then, in a suit to prevent infringement of complainants' rights in their secret processes, to inquire whether complainants have entered into a combination or conspiracy to control the very thing they are lawfully entitled to control? Numerous cases have arisen sustaining these conclusions, some of which are as follows: Park v. Wholesale Ass'n (N. Y.) 67 N. E. 136, 62 L. R. A. 632; Bohn v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319; Pennsylvania Co. v. Bay (C. C.) 138 Fed. 203; Baking Powder Co. v. Boorman (C. C.) 130 Fed. 726; Brown Saddle Co. v. Troxel (C. C.) 98 Fed. 620; Fuller v. Berger, 120 Fed. 274, 278, 56 C. C. A. 588, 65 L. R. A. 381; Barton v. Mulvane (Kan.) 52 Pac. 883, 884; La Fayette Bridge Co. v. Streator (C. C.) 105 Fed. 729, 731; Dennehy v. McNulta, 86 Fed. 825, 829, 30 C. C. A. 422, 41 L. R. A. 609; Harrison v. Glucose Co., 116 Fed. 304, 307, 53 C. C. A. 484, 58 L. R. A. 915; The Charles E. Wisewell, 86 Fed. 671, 673, 30 C. C. A. 339, 42 L. R. A. 85; National Distilling Co. v. Cream City Co., 86 Wis. 352, 56 N. W. 864, 865, 39 Am. St. Rep. 902; Strait v. National Harrow Co. (C. C.) 57 Fed. 819; Edison Electric Light Co. v. Sawyer-Man Electric Co., 53 Fed. 592, 593, 3 C. C. A. 605; American Soda Fountain Co. v. Green (C. C.) 69 Fed. 333, 335; Columbia Wire Co. v. Freeman (C. C.) 71 Fed. 302, 306; Bonsack Co. v. Smith (C. C.) 70 Fed. 383, 385; National Box Co. v. Robertson (C. C.) 99 Fed. 985; Insurance Co. v. Clunie (C. C.) 88 Fed. 160, 169; General Electric Co. v. Wise (C. C.) 119 Fed. 922; Bement v. Harrow Co., 186 U. S. 76, 22 Sup. Ct. 747, 46 L. Ed. 1058; Scribner v. Straus (C. C.) 130 Fed. 389.

It is true that the dominion of the owner of a secret process over the articles manufactured under that process ceases upon their sale. They then become articles of general merchandise subject to sale and resale, just as though no right of exclusion ever existed in regard to them. Defendant might lawfully buy these remedies from retail druggists at the prices fixed in the contracts between them and the manufacturers or general wholesale agents, and sell them at will for such prices as he might make. This, however, is a very different thing from obtaining these medicines by inducing wholesalers or retailers to violate their contracts with the owners of the formulas. Defendant may properly be enjoined from in any way procuring a violation of these contracts, since they are lawful and proper, under the circumstances. Exchange Telephone Co. v. Gregory, 74 L. T. (N. S.) 85; In re Park (Southern Dist. Ohio) 138 Fed. 421; Railway Co. v. McConnell (C. C.) 82 Fed. 65; Garst v. Hall, 179 Mass. 588, 61 N. E. 219, 55 L. R. A. 631.

For these reasons, the exceptions to the answers in the three cases should be sustained.