### NATIONAL PHONOGRAPH CO. v. SCHLEGEL et al.

(Circuit Court, S. D. Iowa, E. D. October 6, 1902.)

No. 245.

1. INJUNCTION—STIPULATION OF PARTIES—DISCRETION OF COURT.

An injunction is not granted as of course, but only in the discretion of the court, where it is necessary to prevent irreparable injury, for which there is no adequate remedy at law; and in the exercise of such discretion the court will refuse to award the writ where the cause has not been litigated on the merits, and it appears from the fact that defendant has interposed no defense, but has stipulated that a permanent injunction shall issue against him; that it is not necessary to protect any rights of complainant as between the parties, but is apparently sought solely for the effect it may have upon others with whom complainant has similar contract relations.

2. SPECIFIC PERFORMANCE — CONTRACTS ENFORCEABLE — RESTRICTIONS UPON SALES OF PATENTED ARTICLES.

Complainant alleged in its bill that it was exclusive licensee for the sale in the United States of Edison phonographs, blanks, and records, which were covered by patents owned by its licensor; that, in order to protect the public and dealers, it required all purchasers, whether jobbers or retail dealers, to sign a contract that they would not sell the instruments at less than the list prices furnished by complainant. *Held*, that such a contract was not one which a court of equity would enforce by an injunction restraining a purchaser from selling instruments which he had bought from complainant, and paid for, at less than the prices fixed by complainant.

In Equity. On application for a decree granting a perpetual injunction in accordance with a stipulation of the parties.

Robert W. Hayes and W. J. Roberts, for complainant.

McPHERSON, District Judge. In the month of May last I filed an opinion herein, but subsequently granted a rehearing. The case has been argued orally by counsel for complainant, and elaborate briefs for complainant have been submitted. I have given the case on rehearing full consideration, having considered not only all the cases cited by counsel, but have given the question an independent consideration, and for the second time present my views. On the former hearing I reached the conclusion that this is a collusive suit. In this I was mistaken, and I now ground my decision upon the facts pleaded in the bill. This is a bill in equity, praying for an injunction against the defendants. At this time I shall not order the writ, although a written agreement, signed by complainant and both defendants, has been filed and presented to me, in which it is agreed that a permanent injunction shall issue. In the face of such written agreement, as it may be thought that such a refusal is arbitrary, I now reduce the reasons of my refusal to writing, and file them in the case.

Complainant is a New Jersey corporation. It alleges that the Edison Phonograph Company, a corporation of New Jersey, is the owner of the patents of Thomas A. Edison covering phonographs, record blanks, and records, and that it has the exclusive license for the sale of such phonographs, blanks, and records. The phonograph machine 'for recording and reproducing sound is described at much length, and it is said to be of great commercial value, and that large numbers are being sold and in use. The complainant, under such license for the last three years, has been selling great numbers of these machines in all parts of the United States, including Iowa, and has built up a very remunerative business, and there is a great demand by the public for the machines. These machines and records are all made by the Edison Phonograph Works, a New Jersey corporation; and, as stated, complainant has the exclusive right to sell them. There are many types of the machines and records, but all are covered by the Edison patents. In order to protect the public and the dealers throughout the United States, complainant established a plan about May 1, 1900, by which every dealer, both jobber and retailer, should not sell such machines and records at prices less than the price established by complainant. In April, 1901, such a contract was entered into by complainant and the defendants. Defendants are dealers in such instruments and music in Davenport, Iowa. Price lists, both at wholesale and retail, were annexed to the contract, and were made a part thereof. These price lists and terms, forming part of the contract, are novel and curious. The machine must not be sold to any dealer who will not sign a like agreement. No machine must be sold if its number is erased, and to violate that is an infringement of the patent. The machine must not be exchanged for other property at any price. Machines shopworn must not be sold at any reduction. Jobbers must keep complainant ad-

117 F.—40

vised of all persons in the business. One dealer cannot borrow from another, excepting in an emergency. He cannot pay for them, but must, as soon as possible, replace the goods by buying from complainant. No person can buy from a jobber unless he has an established place of business, and no jobber shall give any discount excepting as per agreement with complainant. From the date of the agreement in April, 1901, until March, 1902,—about eight months,—the defendants observed the agreement aforesaid in all particulars. But in March, 1902, defendants, having a large number of machines on hand, commenced to sell to parties who had not signed a like agreement, and defendants are selling at less than schedule prices. This, complainant says, interferes in keeping up prices with other dealers in Davenport and other points in Iowa and in the United States generally. The prayer is for an injunction enjoining defendants from selling goods they have bought and paid for at a less price than that fixed by complainants. The bill is verified by its president.

It will be observed that the grievances complained of commenced in April, 1902. This bill was filed April 18, 1902. No solicitor has appeared for defendants. April 29, 1902, the defendants signed a written stipulation agreeing that a perpetual injunction may be issued against them, and a few days later this was filed. On the bill and stipulation the case has been submitted on final hearing. On such papers the following matters occur to me: Why do defendants agree to be enjoined? Is it simply to save costs? Is not the contract one that stifles trade? And if it is such a contract, should this court enforce it by the great writ of injunction? Are the parties to the contract alone concerned in its enforcement? Aside from the patent laws, and the monopoly thereby created, no one would question for a moment that the contract above set out is one that no court of law would give damages for its breach, and that no court of equity would give a decree for specific performance, or enjoin the violation thereof. And counsel in oral argument did not with earnestness deny this. And even if it were a valid contract, if not controlled by our patent laws, it will be observed that after one or more violations of the contract the defendants have agreed, in effect, to in the future observe the contract. This agreement the complainant recognizes as valid, and now seeks its enforcement, although there is now no threatened repudiation either of the original contract or of this later agreement of acquiescence of the former contract. This of itself ought to defeat the prayer for injunction, because an injunction is to prevent the repetition of unlawful acts, or the invasion of complainant's rights; and on the record complainant is as secure without as with the writ of injunction. Injunctions are not granted as of course, and should not be granted when it is believed, as I do believe, that such a writ would be improperly used. As an injunction is not required to coerce the defendants in this case, they, in effect, having agreed to comply with complainant's demands, for what can the writ be used? Undoubtedly to intimidate or terrorize others engaged in the like business. It will be used to hold up to others that this court has recognized the validity of the contract. The decree of

this court will be used for advertising literature; and, before a decree should be so used, it should be quite certain that such a decree is required as between the parties to the record. Believing that such a decree is not required as between the parties to the record herein on such grounds, the writ, although agreed to by the parties, should be denied.

But in view of the arguments of complainant's counsel, the case calls for additional reasons on my part before denying the writ. It is urged that our constitution and laws recognize the validity of such a monopoly as pleaded, and that restraints and stifling of trade are all in harmony with our system of patent laws. It probably is true that a patentee, or licensee of a patentee, can sell or refuse to sell the article covered by the patent. It quite likely is true that he can sell to whomsoever, many or few, he pleases. And it seems to be true that by selling only to the selected few he can thereby create and control a monopoly, free from interference by the public, and subject to no control by the courts. All this may be granted, and, for the purposes of this case, is conceded. But the answer to this argument is that complainant, having, as it contends, the control of the patented articles, has sold them to the few, and these few of its own selection; and, having sold the articles at its own price, to the parties thus chosen, can it, by contract, control the sales, other than by limiting a prescribed territory? The issuance of writs of injunction is discretionary. They are to be issued when there is no adequate remedy at law. They are to be issued when irreparable injury will occur but for the writ. The public has no interest in having this writ issued. If the public has any interest in the matter,—and I think it has a very great interest,—it is in having competition, freedom of trade, and no stifling of business, and particularly as to those things of common use. And the bill alleges that the phonographs are of great and growing necessity. The argument of complainant's counsel is that, if the owner of a patent can refuse the right to any one to buy the object covered by the patent, why cannot he say that the rights of the purchaser to resell shall be covered by limitations and restrictions? The constitution provides that congress shall have the power to promote the progress of science and the arts by securing to the inventors the exclusive right of their discoveries; and this congress has provided for by giving to the patentee for a limited time a grant to make, use, and sell such articles covered by the patent; and such grants or letters of patent are assignable. Now, what has the patentee? The answer is the exclusive right to make, the exclusive right to use, and the exclusive right to sell the article covered by the patent. No one, as presented by the bill in this case, is seeking to interfere with complainant in the making or using, and all that is complained of is that complainant's exclusive right to sell is being interfered with. When, and by whom? There is not the pretense in the bill that by any act of defendants are the number of sales lessened, or that the price which complainant fixes is in any way cut down. All the phonographs covered by the Edison patents that the public want must come from and do come from complainant's warehouse. And they come from there at complainant's prices. But

because defendants, in selling them as leaders, or for some other reason, sell them at a less price than does complainant sell them for, is the only reason urged for an injunction. Dickerson v. Tinling, 28 C. C. A. 139, 84 Fed. 192, by the circuit court of appeals for this circuit, is cited as an authority. In that case one purchased in Europe a patented article from one other than the owner of the United States patent. It was held that such purchaser could not import the article to the United States and then resell it. That being the question decided, I am not able to consider the case as an authority. One can readily see that such acts amounted to an infringement, and the court of appeals so adjudged. Dickerson v. Matheson, 6 C. C. A. 466, 57 Fed. 524,—being a case by the court of appeals for the Second circuit,—is cited. In that case a patent had been issued in a foreign country and also in the United States; and the doctrine in the case announced was that one could not purchase the article in the foreign country, import it to this, and here sell, without the consent of the licensee in this country. The case of Phonograph Co. v. Kaufman (C. C.) 105 Fed. 960, is relied on. That case was decided by a trial court. An agreement had been made by the parties something like the agreement in the case at bar. But the acts complained of were that the defendant was buying his goods elsewhere than of complainant. Here the defendant has bought the goods of complainant at the agreed price, but is again selling them, not to objectionable parties, but at objectionable prices. I do not consider the case cited as in point, or controlling as an authority. It was said by Justice Swayne in Densmore v. Schofield, 102 U. S. 375, 378, 26 L. Ed. 215:

"Patents rightfully issued are property, and are surrounded by the same rights and sanctions which attend all other property. Patentees as a class are public benefactors, and their rights should be protected. But the public has rights also. The rights of both should be upheld and enforced by an equally firm hand, whenever they come under judicial consideration."

Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52, 27 L. Ed. 79, is relied on. But what that case holds is that, after a patented article consisting of two parts has been once sold and used, a party cannot take the one part not impaired by the use, attach it to another part of his own make, and then resell the whole, without being guilty of infringement.

I find no authority, and none has been cited by counsel, that, in my judgment, sustains complainant's contention; and, aside from the phases of the patent law that have been argued, in my judgment the contract in suit cannot be the basis of an action at either law or in equity. And it likewise is my judgment that the contract cannot be upheld even though the articles of merchandise are covered by patents.

The writ of injunction will be denied, and the bill dismissed.