---

## In re PARK.

### (Circuit Court, S. D. Ohio, W. D. May 27, 1905.)

SALES—FRAUD—REPLEVIN—CONSPIRACY—EVIDENCE—IRRELEVANCY—TRADE SECRETS.

Where plaintiff, a seller of a proprietary medicine, brought replevin to recover a car load thereof on the ground that it was purchased pursuant to a fraudulent conspiracy by the buyer to ultimately resell the same to defendants, P. & Sons Co., in violation of certain contracts between plaintiff and the buyer, and that P. & Sons Co. were not entitled to purchase such medicine, an officer of such concern was not entitled to refuse to answer whether the company ever purchased any of such medicine or had any interest therein, or to refuse to produce correspondence relating to the sale, on the ground that such questions were irrelevant, and tended to require disclosure of trade secrets, consisting of the names of the persons through whom such company obtained goods from plaintiff.

` [Ed. Note.—Disclosure ' of trade secrets, see note to S. Jarvis Adams Co. v. Knapp, 58 C. C. A. 8.]

Action by Samuel B. Hartman against William O. Feenaughty and others to recover certain goods. On application for an order to compel Ambro R. Park to answer certain questions on his deposition taken before the clerk of the court in response to a subpœna duces tecum.

Samuel B. Hartman brought suit in the United States Circuit Court for the Western District of New York in replevin against William O. Feenaughty as an individual and as sheriff of Steuben county, N. Y., and others, to recover possession of a car load of Peruna manufactured and sold by plaintiff to McKesson & Robbins, New York City, and shipped and billed to that firm. They reshipped the same, without unloading, to one Charles H. Loveland, of Binghamton, N. Y., in alleged violation of a contract then existing between plaintiff and McKesson & Robbins, of which Loveland had notice, and also in violation of a contract existing between Loveland and plaintiff he reshipped said Peruna to one M. W. Chambers, of Dayton, Ohio, for John D. Park & Sons Company, who had no notice of said contracts, the delivery of which Peruna was prevented by the replevin proceedings. Plaintiff claimed that the order for said goods and the obtaining a delivery thereof from plaintiff was the result of a fraudulent conspiracy between McKesson & Robbins, Charles H. Loveland, and John D. Park & Sons Company, in violation of contracts subsisting between plaintiff and McKesson & Robbins and Charles H. Loveland, and that M. W. Chambers was simply an intermediary or cover for shipment to John D. Park & Sons Company, and that it was the intention of McKesson & Robbins, Charles H. Loveland, and John D. Park & Sons Company in this way to get the Peruna to John D. Park & Sons Company in vio-

lation of said contracts and of plaintiff's contract restrictions; and that, as soon as plaintiff discovered said fraudulent conspiracy, he repudiated the sale, tendered back the purchase price, and replevined the Peruna. In order to establish said fraudulent conspiracy, plaintiff sought to take the evidence of one Ambro R. Park, an officer of John D. Park & Sons Company, before the clerk, before trial of the action, in response to a subpœna duces tecum, and on such examination asked the said Park the following questions, which he refused to answer on the ground of immateriality, and on the claim of privilege, in that as the persons and firms from whom the firm of John D. Park & Sons Company purchased goods and to whom it sold goods was a trade secret, the divulgence of which would work irreparable damage to himself and John D. Park & Sons Company and to third parties: "(1) Has the John D. Park & Sons Company ever purchased any Peruna from Charles H. Loveland? (2) This suit that you are testifying in is about the ownership of a car load of Peruna, comprising six hundred and sixty cases, originally shipped by the plaintiff from Columbus, Ohio, to McKesson & Robbins, New York City, and by them rebilled to Charles H. Loveland of Binghamton, New York, and by Loveland rebilled to M. W. Chambers or N. W. Chambers, Dayton, Ohio. The car number is N. & W. No. 61,306. Do I understand you to testify that John D. Park & Sons Company never had any interest in that car or the Peruna? (3) I will ask you whether John D. Park & Sons Company has in its possession, and, if so, that you produce, copies of all letters, telegrams, orders, and communications sent by John D. Park & Sons Company or any other person in its behalf, during the month of December, 1904, and January, February, March, and April of 1905, to N. W. Chambers, or M. W. Chambers, McKesson & Robbins, or Charles H. Loveland, in any way concerning or relating to the article Peruna, or the purchase or sale thereof? What do you say as to such copies of letters, telegrams, and communications and their production? If you have any such, will you produce them? (4) What is the practice of the Park Company in reference to scratching off the serial numbers (on cases, wrappers, and bottles and labels of Peruna) before they ship the goods?"

Frank F. Reed, H. H. Hershey, and Frank W. Hinkle, for petitioners.

William J. Shroder, opposed.

THOMPSON, District Judge (orally). Samuel B. Hartman, who is the plaintiff in an action in replevin brought in the United States Circuit Court in the Western District of New York against William O. Feenaughty et al., moves the court for an order requiring Ambro R. Park, a witness whose deposition is now being taken in that cause before the clerk of this court, under section 863 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 661], to answer certain questions and produce certain documents. He refuses to answer the questions and to produce the documents upon the ground that they are not material or relevant to the matter in controversy, and on the further ground that the answers to the questions would disclose trade secrets. I have read the testimony, so far as it has been taken, and have in mind the questions that were asked, which the witness refused to answer.

In the first place, as to the relevancy of the testimony sought to be elicited by these questions. The case sought to be made in the replevin suit is this: That McKesson & Robbins and Charles H. Loveland and John D. Park & Sons Company, conspiring together for that purpose, fraudulently obtained a car load of Peruna from plaintiff, and that the plaintiff, when he discovered the fraud, promptly

repudiated the contract of sale, tendered back the purchase price, which had been paid, and replevined the goods. In order to maintain the suit, therefore, it is necessary to show that the possession of these goods was obtained by fraud practiced upon the plaintiff, which justified him in repudiating the contract. I do not care to discuss the question of the right to repudiate the contract. I think there can be no question about that if it be true that the goods were fraudulently obtained. McKesson & Robbins and Loveland both had contracts with Hartman to enable them to obtain Peruna, and the claim is that, in violation of these contracts, they entered into a conspiracy with John D. Park & Sons Company to obtain Peruna from Hartman, and ship it to that company; the company being engaged quite extensively in the business of selling Peruna, and having no relation or contract with Hartman which would enable it to obtain Peruna in any other way. But it is said the contracts with McKesson & Robbins and Loveland are executory, and that Hartman must look to them for damages for the wrongful disposition of the goods, and cannot attack the sale. The charge, however, as I understand it, is that this particular car load of Peruna was obtained by fraud practiced upon Hartman, and in furtherance of the scheme by which John D. Park & Sons Company sought to obtain Peruna when they could not have obtained it otherwise. The representation of McKesson & Robbins to Hartman was this: "Under our contract, we want to buy this Peruna, put it upon the market and sell it as your agents, as we have been doing heretofore," when in fact that was a misrepresentation. They did not want it for any such purpose, but wanted it for the purpose of selling it to John D. Park & Sons Company, in violation of their contracts with Hartman. Therefore, in the opinion of the court, the testimony sought to be elicited from this witness, Ambro R. Park, is relevant as tending to show this fraudulent scheme by which the Peruna was obtained from Hartman.

The witness repeats over and over again that the answers to the questions put to him will not incriminate him, or will not subject him to a penalty or forfeiture; but, as I have already stated, his sole ground for refusing to answer is that the questions are irrelevant to the issues in the case pending in the New York court, and that the answers thereto would disclose trade secrets. The court is of the opinion that the testimony is entirely relevant, and that no trade secrets will be disclosed.

There is a suggestion that this firm of John D. Park & Sons Company is fighting Hartman and the trust organizations, as they are called, which are engaged in this business; that this firm is outside and independent, but at the same time is trying to get these goods by indirect methods; and the trade secret set up here is that, if Park discloses the names of the men he uses to fraudulently obtain goods from Hartman, it will prevent him in the future from obtaining goods in that way. Well, that is hardly a trade secret that should be protected by the courts.

The line of examination, in the opinion of the court, was legiti-

mate, and counsel for the plaintiff in the case has stated to the court that it is his purpose and intention to keep within the rule of relevancy, and not to call out or seek to call out from this witness anything that would not be entirely relevant to the issues in the replevin suit.

It has been suggested that the court should instruct counsel as to the line of questions to which the examination should be confined. The court cannot do that. Counsel on both sides are able, the issue simple, and they know what is relevant; and the court expects them to keep within the rule, and not go outside of it, to ask impertinent questions which may be annoying to the witness, but would not throw light on the matter under investigation. I take it there will be no trouble on that score. What this witness knows relative to the transaction under investigation should be disclosed, and any documents or papers in his possession which may throw light on it should be produced. He should answer the questions and produce the papers and documents, if he has them, and the court will so order.

Mr. Reed: As to the subpœna—do you want us to issue a formal subpœna?

THE COURT: Well, I had forgotten that. I am in doubt as to whether it is necessary, but it seems to have been the practice, and I will conform to the practice, and make an order directing the clerk of this court to issue a subpœna duces tecum for the books and papers called for.

Mr. Shroder: I do not insist upon the issuing of the subpœna. I am satisfied with the order, your honor.

THE COURT: Very well, then.

Mr. Shroder: There is one line of questioning which I would like to have defined, so as to avoid any future controversy, if possible; and that is, those questions which relate to what John D. Park & Sons Company did with the goods after they received them. I submit that is plainly irrelevant to the issue, and immaterial.

THE COURT: Well, I do not see the relevancy of that.

Mr. Reed: I do not intend to pursue that, your honor, or to ask for any names.

THE COURT: There is one feature of the case that justifies counsel in going farther than he would otherwise be entitled to go. This is an unwilling witness, and in a measure might be dealt with as if upon cross-examination; but counsel should keep strictly within the line of relevancy, and not go into the private business of this firm, which has no reference to the matter under investigation.

Mr. Reed: I do not intend to examine as to the disposition of the goods at all, specifically.

THE COURT: As now advised, I cannot see what relevancy it would have to show what they did with the goods afterwards.