### WINCHESTER REPEATING ARMS CO. v. BUENGAR et al.

(District Court, E. D. Wisconsin. October 30, 1912.)

1. PATENTS (§ 257*)—INFRINGEMENT—RIGHT TO ATTACH CONDITIONS TO LICENSE—PRICE RESTRICTIONS.

The owner of a patent, who manufactures and sells the patented article, may reserve to himself, as an ungranted part of his monopoly, the right to fix and control the prices at which jobbers or dealers buying from him may sell to the public; and a dealer who, with knowledge of such reservation, violates the conditions of the contract under which he bought the article, is an infringer of the patent.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 257.*]

2. PATENTS (§ 296*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

In a case disclosing long acquiescence in a patent and clear infringement, a preliminary injunction may issue without a prior adjudication, unless the validity of the patent is challenged in some affirmative or equally specific manner, raising a fair doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 476, 477; Dec. Dig. § 296.*]

3. PATENTS (§ 283*)—INFRINGEMENT—VIOLATION OF LICENSE AGREEMENT.

The fact that the owner of a patent, who makes and sells the patented article under a license system fixing prices at which it may be resold by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jobbers and dealers, does not uniformly enforce the conditions so imposed, is not available as a defense to one who has violated them.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

In Equity. Suit by the Winchester Repeating Arms Company against H. Buengar and Leon A. Olmsted. On motion for preliminary injunction. Motion granted.

The complainant has moved for a preliminary injunction upon a bill, supported by affidavits, charging defendants with infringing five letters patent, owned by the complainant, relating to gun improvements capable of conjoint use, and embodied in the gun known as "Winchester Repeating Shotgun 1897," made by the complainant. It is charged that on January 1, 1909, the complainant adopted a license system, prescribing conditions under which the gun embodying the patented improvements may be sold. Such license is printed on a tag attached to each gun, and is as follows:

"To the Trade of the United States of America:

"Mechanism in these guns is covered by United States letters patent. The guns are licensed and sold under and subject to the following conditions, accepted and assented to by the act of purchase, and controlling all sales and uses of these guns. Any violation of the conditions of this license revokes and terminates all rights and license as to these guns, and any patented article of the Winchester Repeating Arms Company in the violator's possession, and subjects the violator to suit for infringement, and also transfers to and revests in the company the title to all of its patented products in the possession of the violator, and, upon demand and tender of purchase price thereof, entitles the company to immediate possession of all such patented products.

"License Conditions.

"(1) Jobbers may sell at wholesale only to retail dealers regularly handling these goods; may not sell to any one designated by the company as a violator of license conditions; may not mutilate or remove this license notice: may not expose for sale or sell without this license notice; and may sell only at prices established by the company and printed in its schedules.

"Retailers may not remove this license notice, or expose for sale or sell without this license notice, and may not sell at less than the current retail price established for the gun to which this license notice is attached, and printed in the schedules of the company.

"All sales must be made with the article and its serial number (if any), and accompanying instructions, directions, and indemnifying marks unchanged and unmutilated.

"Winchester Repeating Arms Co., Makers,
"New Haven, Connecticut, U. S. A."

The bill and supporting proofs show clearly that the defendants, copartners, who conduct a hardware store in Milwaukee, were notified of the adoption, terms, and conditions of the system, but that they deliberately offered for sale and sold "Winchester shotguns, Model 1897," at less than the selling price established by the license system. The price established as to the guns sold by the defendants was $21.60. They advertised and offered to sell at $19.95. Purchases were proven to have been made for $19.98 and $19.24, and the circumstances attending such sales show clearly that at the time of sale defendants not only knew of the license system and the prices to be adhered to on the sales of the particular guns, but that in their dealings with the purchasers they disclosed a purpose to ignore such license system and schedule. The proofs are detailed and specific, clearly identifying the alleged sales as being of guns having attached the tag and other physical evidences of the license restrictions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., and George D. Seymour, of New Haven, Conn., for complainant.

Fred Gerlach, of Chicago, Ill., for defendants.

GEIGER, District Judge (after stating the facts as above). [1] Complainant's case appears so clearly to be ruled by Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, and Victor Talking Machine Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58, that consideration of the license contract and system, with a view of determining its validity and scope, is unnecessary. The controlling authority of these adjudications forecloses any question respecting the infringing character of defendants' acts.

[2] The complainant's patents, though their validity has never been adjudicated, are shown to have received recognition through long and extended public acquiescence and use. Neither upon the argument nor in defendants' answer, since filed, is this called in question. Such answer cannot, by mere formal denial or averment, avail to overcome or cast in doubt the specific and detailed averments of the bill and supporting affidavits. In a case disclosing long acquiescence, public use, utility of the patented device, as well as clear infringement, a temporary injunction may be issued, without prior adjudication, unless the validity of the patent is challenged in some affirmative or equally specific manner, giving rise to a fair doubt.

It was contended upon the argument, and it is now averred in the defendants' answer, that complainant's license system is a mere scheme or pretense for keeping alive expired patents, the improvements covered by which are embodied in its guns; that the essential features of guns manufactured by it are set forth in certain expired letters patent, but that the letters patent in suit "are for trivial, frivolous, and ordinary shop expedients"; and, "in view of the state of the art as it existed at the time of said alleged dates of invention, the said letters patent and each of them do not, and did not at the time set forth, cover any patentable invention." It is also charged, in substance, that the complainant has not enforced the so-called license system uniformly and in good faith, but has, in its dealings with certain wholesalers, disregarded it by allowing rebates, and that such system is used "simply for unlawful purposes."

The first of these contentions, involving, as it does, the general claim of invalidity, should be supported, it would seem, by a disclosure of particulars wherein each of the five patents was fully anticipated by an expired patent. The issue tendered by the bill and affidavits, asserting a right founded upon five patents, is not fairly met by the general allegation that such patents are all anticipated by a specified expired patent, which allegation at the same time acknowledges additional features, summarily characterized as trivial and frivolous; and, in view of the public acquiescence, established by complainant, I do not think that doubt is raised or suggested by such allegation.

[3] With respect to the claim that the complainant, since the adoption of its license system, has not enforced it uniformly, or in good faith, that it has granted rebates to wholesalers, it seems to me that,

even if such is admitted to be the fact, it does not constitute a defense available to any particular infringer. This contention is doubtless based upon the assumption that a patentee, having adopted, as between himself and the trade, a license system, is bound to its literal maintenance. He cannot thereafter discriminate, except under penalty of surrendering his reserved rights or discharging all the restrictions. Whether, as an abstract proposition, this is or ought to be sound, need not be determined. It would seem, however, that, having the right to adopt the system, including a schedule of prices, he can at any time, as an incidental feature and as a part of the whole, make concessions based, for example, upon the volume of patronage. And it is difficult to see why, if he can adopt any system he sees fit, he cannot, in making concessions as indicated, at the same time require that such concessions shall not impair the integrity of the system in other respects. In other words, he may make concessions to wholesalers on condition that the retail price prescribed by the schedule shall not thereby be disturbed. Of course, if an alleged infringer can show the patentee's course of dealing with or conduct toward him to be such as disclosed a purpose to surrender the reserved right, or to discharge the restriction, a different question might be presented. But here the defendants merely allege that complainant had not exacted literal compliance with the license agreement on the part of certain patrons, or had granted concessions. There is no suggestion of anything having the element of estoppel, no course of dealing on the part of complainant with defendants, or anybody, upon which defendants justifiably relied in making sales violative of the license schedule. On the contrary, the advertisements published by them, and their conduct and statements attending the alleged infringing sales, disclose a deliberate purpose to violate or evade the license, notwithstanding complainant's protests.

The claim is made in defendants' answer that the complainant's license system is a "part and parcel of an unlawful scheme to maintain and fix the selling prices" of all its products, whether patented or not. If defendants, instead of selling a patented product which they well knew to be subject to the restrictive terms of a license, had sold an unpatented product, they might be in a position to urge the merit, if any, of this claim. But they can hardly insist that they should be relieved from compliance with the lawful stipulations because complainant may have endeavored to comprehend within the system situations not involving defendants, but alleged to be beyond its lawful scope.

It is urged that because, in an action pending against the defendant Olmsted, in the District Court for the Northern District of Illinois, an injunction was refused, none should be awarded here. Such defendant, alone, conducts a store in Chicago. At Milwaukee, he and the defendant Buengar, as copartners, conduct another. Different infringing acts are alleged in each suit, though the sales in Milwaukee are referred to in the former suit. Under such circumstances, the complainant could not obtain full relief in the first suit; and the

parties, in their answer herein, have not attempted to claim its pend·
ency as ground for abatement.

I think complainant has made a case entitling it to a temporary in-
junction. Such injunction may issue, the complainant to give an un-
dertaking in the sum of $1,000; conditioned for the payment of such
damages as defendants may sustain by reason thereof, if the court
should ultimately determine that it was not properly awarded.